Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (310) 285-5330
E-mail:     jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
E-mail:    jalieberman@pomlaw.com
           ahood@ pomlaw.com
           mgorrie@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
E-mail:   pdahlstrom@pomlaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE DEASON, Individually and On Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| SUPER MICRO COMPUTER, INC., CHARLES LIANG, and HOWARD HIDESHIMA, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Dale Deason ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Super Micro Computer, Inc. ("Super Micro Computer" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

## **NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Super Micro Computer securities between September 15, 2014 and August 31, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.     Defendant Super Micro Computer develops and provides high performance server solutions based on modular and open-standard architecture. The company offers a

range of server, storage, blade, workstation, and full rack solutions, as well as networking devices, server management software, and technology support and services. It also provides a range of application optimized server solutions, including rackmount and blade server systems; and server subsystems and accessories comprising server boards, and chassis and power supplies, as well as other system accessories, including microprocessors, and memory and disc drives. The company offers its products to data center, cloud computing, enterprise IT, big data, high performance computing, and embedded markets.

3. Super Micro Computer was founded in 1993 and is headquartered in San Jose, California. Its shares trade on the NASDAQ exchange under the ticker symbol "SMCI."

4. Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company improperly recorded expenses in its financial reports; (ii) as a result, the Company's reported net income was misstated; (iii) the Company lacked adequate internal financial controls; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

5.   On August 31, 2015, post-market, Super Micro Computer announced that the Company "has determined that it is unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2015 within the prescribed time period without unreasonable effort or expense. [Super Micro Computer] recently discovered certain irregularities regarding certain marketing expenses and additional time is required for [the Company] to complete its investigation of the matter."

6.   On this news, shares of Super Micro Computer declined $2.58 per share, or 9.43%, to close at $24.77 on September 1, 2015.

7.   As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.   The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

9.   This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

10.   Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company maintains corporate offices in this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Super Micro Computer securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Super Micro Computer is a Delaware corporation with its principal executive offices located at 980 Rock Avenue, San Jose, California 95131. Super Micro Computer's common stock trades on the NASDAQ under the ticker symbol "SMCI."

14.     Defendant Charles Liang ("Liang") has served at all relevant times as the Company's Chief Executive Officer.

15.     Defendant Howard Hideshima ("Hideshima") has served at all relevant times as the Company's Chief Financial Officer.

16.     The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Defendant Super Micro Computer develops and provides high performance server solutions based on modular and open-standard architecture. The company offers a range of server, storage, blade, workstation, and full rack solutions, as well as networking devices, server management software, and technology support and services. It also provides a range of application optimized server solutions, including rackmount and blade server systems; and server subsystems and accessories comprising server boards, and chassis and power supplies, as well as other system accessories, including microprocessors, and memory and disc drives. The company offers its products to data center, cloud computing, enterprise IT, big data, high performance computing, and embedded markets.

18.     The Company was founded in 1993 and is incorporated in Delaware, with headquarters in San Jose, California.  Its shares trade on the NASDAQ exchange under the ticker symbol "SMCI."

### Materially False and Misleading
### Statements Issued During the Period

19.     The Class Period begins on September 15, 2014, when Super Micro Computer filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal quarter and year ended June 30, 2014 (the "2014 10-K").  For the quarter, the Company reported net income of $16.55 million, or $0.34 per diluted share, on revenue of $428.07 million, compared to net income of $8.43 million, or $0.19 per diluted share, on revenue of $322.33 million for the same period in

the prior year.  For fiscal year 2014, the Company reported net income of $54.16 million, or $1.16 per diluted share, on revenue of $1.47 billion, compared to net income of $21.28 million, or $0.48 per diluted share, on revenue of $1.16 billion for fiscal year 2013.

20.     The 2014 10-K stated, in part:

*Sales and marketing expenses.* Sales and marketing expenses consist primarily of salaries and incentive bonuses for our sales and marketing personnel, costs for tradeshows, independent sales representative fees and marketing programs. From time to time, we receive cooperative marketing funding from certain suppliers. Under these programs, we are reimbursed for certain marketing costs that we incur as part of the joint promotion of our products and those of our suppliers. These amounts offset a portion of the related expenses and have the effect of reducing our reported sales and marketing expenses. Similarly, we from time to time offer our distributors cooperative marketing funding which has the effect of increasing our expenses. The timing, magnitude and estimated usage of our programs and those of our suppliers can result in significant variations in reported sales and marketing expenses from period to period. Spending on cooperative marketing, either by us or our suppliers, typically increases in connection with significant product releases by us or our suppliers.

21.     The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     On October 21, 2014, Super Micro Computer issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the fiscal quarter ended September 30, 2014 (the "Q1 2015 8-K").  For the

quarter, the Company reported net income of $20.86 million, or $0.42 per diluted share, on revenue of $443.32 million, compared to net income of $7.70 million, or $0.17 per diluted share, on revenue of $309.02 million for the same period in the prior year.

23.    In the Q1 2015 8-K, the Company reported Sales and Marketing expenses of $11 million for the quarter, compared to Sales and Marketing expenses of $8.87 million for the same period in the prior year.  In the Q1 2015 8-K, the Company stated, in part:

> The Company expects net sales of $440 million to $480 million for the second quarter of fiscal year 2015 ending December 31, 2014. The Company expects non-GAAP earnings per diluted share of approximately $0.44 to $0.50 for the second quarter.

> "We began fiscal 2015 with an exceptional first quarter of record revenue and profits. In the first quarter, we grew revenues 43.5% over last year and posted our fourth consecutive quarter of record results. This again outperformed multiple times the industry growth rate. With 57.7% of our revenue coming from systems based on our Storage, GPU/Xeon Phi, Twin, MicroCloud and Network Switches, we continue to improve margin through a mix of higher value system products," said Charles Liang, Chairman and CEO. "As we ship our latest X10 generation Haswell DP products, a brand new I/O optimized Ultra server architecture and industry-leading hot-swappable NVMe solutions, we are confident our technology innovation will continue to drive our growth momentum into the remainder fiscal 2015."

24.    On November 6, 2014, Super Micro Computer filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q1 2015 8-K (the "Q1 2015 10-Q").

25.     The Q1 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On January 20, 2015, Super Micro Computer issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the fiscal quarter ended December 31, 2014 (the "Q2 2015 8-K"). For the quarter, the Company reported net income of $31.24 million, or $0.61 per diluted share, on revenue of $503.01 million, compared to net income of $13.34 million, or $0.30 per diluted share, on revenue of $356.36 million for the same period in the prior year.

27.     In the Q2 2015 8-K, the Company reported Sales and Marketing expenses of $11.16 million for the quarter, compared to Sales and Marketing expenses of $8.98 million for the same period in the prior year. In the Q2 2015 8-K, the Company stated, in part:

> The Company expects net sales of $450 million to $500 million for the third quarter of fiscal year 2015 ending March 31, 2015. The Company expects non-GAAP earnings per diluted share of approximately $0.46 to $0.52 for the third quarter.
>
> "Last quarter we achieved our fifth consecutive record high revenue which was 41.2% higher than last year and we reached our goal of $2 billion annual run rate for revenues in a quarter. Not only was this quarter outstanding from a revenue perspective, but we also continued to improve our operating margin. This performance was driven by a significant increase in our new Haswell product shipments in the first full quarter since its launch, and we are confident that a strong cycle of technology transition is

underway. Strength in Storage and Cloud market verticals were part of a record for server systems revenue at 60.1%," said Charles Liang, Chairman and Chief Executive of Supermicro. "Supermicro has the broadest product portfolio of application optimized server/storage technology in the industry featuring our Ultra line of servers as well as many choices for multi-node servers including our Twin architecture, Blades, MicroCloud and MicroBlade. We are well positioned for growth and market share gains."

28.    On February 9, 2015, Super Micro Computer filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q2 2015 8-K (the "Q2 2015 10-Q").

29.    The Q2 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.    On April 21, 2015, Super Micro Computer issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the fiscal quarter ended March 30, 2015 (the "Q3 2015 8-K").  For the quarter, the Company reported  net income of $23.06 million, or $0.44 per diluted share, on revenue of $471.23 million, compared to net income of $16.57 million, or $0.35 per diluted share, on revenue of $373.76 million for the same period in the prior year.

31.    In the Q3 2015 8-K, the Company reported Sales and Marketing expenses of $12.50 million for the quarter, compared to Sales and Marketing expenses of $9.42

million for the same period in the prior year.  In the Q3 2015 8-K, the Company stated, in part:

> The Company expects net sales of $510 million to $560 million for the fourth quarter of fiscal year 2015 ending June 30, 2015. The Company expects non-GAAP earnings per diluted share of approximately $0.53 to $0.62 for the fourth quarter.
>
> "Supermicro again delivered industry leading growth in the third quarter with 26.1% year over year growth in a seasonally affected quarter. We continued our strong pace of growth in our server and storage solutions business contributing 64.1% of total revenue and with 53.9% of revenues coming from the OEM and Direct customers. Storage, GPU/Xeon Phi, and our Twin family solutions continue to grow strongly year over year, " said Charles Liang, Chairman and CEO. "As we approach the final quarter of this fiscal year we are excited about our opportunities to improve our strong growth trend. Our offerings for Storage, HPC, Enterprise, Datacenter, Cloud and Service are well positioned with the latest technologies to enable Supermicro to win market share."

32.    On May 7, 2015, Super Micro Computer filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q3 2015 8-K (the "Q3 2015 10-Q").

33.    The Q3 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    On August 4, 2015, Super Micro Computer issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the fiscal quarter and year ended June 30, 2015 (the "2015 10-K").  For the quarter, the

Company reported net income of $26.70 million, or $0.51 per diluted share, on revenue of $573.59 million, compared to  net income of $16.55 million, or $0.34 per diluted share, on revenue of $428.07 million for the same period in the prior year.  For fiscal year 2015, the Company reported net income of $101.86 million, or $2.03 per diluted share, on revenue of $1.99 billion, compared to  net income of $54.16 million, or $1.16 per diluted share, on revenue of $1.47 billion for fiscal year 2014.

35.     In the 2015 8-K, the Company reported Sales and Marketing expenses of $14.20 million for the quarter, compared to Sales and Marketing expenses of $10.76 million for the same period in the prior year, and Sales and Marketing expenses of $48.85 million for fiscal year 2015, compared to Sales and Marketing expenses of $38.01 million for fiscal year 2014.  In the Q3 2015 8-K, the Company stated, in part:

> The Company expects net sales of $520 million to $580 million for the first quarter of fiscal year 2016 ending September 30, 2015. The Company expects non-GAAP earnings per diluted share of approximately $0.49 to $0.59 for the first quarter.

> "Supermicro delivered record revenues in the fourth quarter of 34% growth over last year and posting $1.99 billion for the full fiscal year 2015 which was 35.7% above last year. Revenue related to our storage solutions grew 79% year over year in the fourth quarter as storage has become a strategic growth segment with contributions from both traditional and next generation storage solutions. Our FatTwin solutions were also a key growth driver this quarter with over 100% growth year over year and sales of our new MicroBlade solutions grew strongly for a new product category," said Charles Liang, Chairman and CEO. "Looking to 2016 we have never been stronger in terms of leading products like Ultra, GPU/Xeon Phi, Storage, MicroBlade, and our software and service offerings. In order to support our growth, we are in the process of completing a 30% capacity addition in our

San Jose and Europe manufacturing operations. We believe that we are well positioned for continued growth and market share gains."

36.     The statements referenced in ¶¶ 19-35 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (i) the Company improperly recorded sales and marketing expenses in its financial statements; (ii) as a result, the Company's net income was misstated;  (iii) the Company lacked adequate internal financial controls; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**<u>The Truth Emerges</u>**

37.     On August 31, 2015, post-market, Super Micro Computer announced that the Company "has determined that it is unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2015 within the prescribed time period without unreasonable effort or expense. [Super Micro Computer] recently discovered certain irregularities regarding certain marketing expenses and additional time is required for [the Company] to complete its investigation of the matter."

38.     On this news, shares of Super Micro Computer declined $2.58 per share, or 9.4%, to close at $24.77 on September 1, 2015.

39.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Super Micro Computer securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Super Micro Computer securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Super Micro Computer or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Super Micro Computer;

- whether the Individual Defendants caused Super Micro Computer to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Super Micro Computer securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Super Micro Computer securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Super Micro Computer securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

16

47. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed

devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Super Micro Computer securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Super Micro Computer securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Super Micro Computer securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Super Micro Computer's finances and business prospects.

53. By virtue of their positions at Super Micro Computer, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for

the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Super Micro Computer securities from their personal portfolios.

55. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Super Micro Computer, the Individual Defendants had knowledge of the details of Super Micro Computer's internal affairs.

56. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Super Micro Computer. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Super Micro Computer's businesses, operations,

future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Super Micro Computer securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Super Micro Computer's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Super Micro Computer securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

57.     During the Class Period, Super Micro Computer securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Super Micro Computer securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Super Micro Computer securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.

The market price of Super Micro Computer securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

60.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Super Micro Computer, and conducted and participated, directly and indirectly, in the conduct of Super Micro Computer's business affairs. Because of their senior positions, they knew the adverse non-public information about Super Micro Computer's false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Super Micro Computer's financial condition and results of operations, and to correct promptly any public statements issued by Super Micro Computer which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Super Micro Computer disseminated in the marketplace during the Class Period concerning Super Micro Computer's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Super Micro Computer to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Super Micro Computer within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Super Micro Computer securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Super Micro Computer.  By reason of their senior management positions and/or being directors of Super Micro Computer, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Super Micro Computer to engage in the unlawful acts and conduct complained of herein.   Each of the Individual

Defendants exercised control over the general operations of Super Micro Computer and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Super Micro Computer.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as his reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 4, 2015

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (310) 285-5330
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:    (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***