UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ANDREW WANCA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., et al.,<br><br>Defendants. | Case No. 5:15-cv-04049-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 57 |
|---|---|

Plaintiff Andrew Wanca alleges in a Second Amended Complaint ("SAC") that Defendants Super Micro Computer, Inc. and two of its officers violated federal statutes prohibiting fraud in connection with the purchase and sale of securities. Defendants in response move to dismiss the SAC for failure to plead a viable claim. Dkt. No. 57.

Defendants' arguments are meritorious. Their motion will therefore be granted and all claims in the SAC will be dismissed without leave to amend for the reasons explained below.[1]

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

    **A.     The Parties**

Super Micro "develops and provides high-performance server solutions based on modular and open-standard architecture" to "data center, cloud computing, enterprise IT, big data, high performance computing, and embedded markets." SAC, at ¶ 22. Liang was Super Micro's Chief Executive Officer and Hideshima was its Chief Financial Officer. Id. at ¶¶ 14, 15.

Plaintiff is an investor who purchased 350 shares of Super Micro common stock on

---

[1] Federal subject matter jurisdiction arises pursuant to 28 U.S.C. § 1331.

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1

February 17, 2015. Id. at ¶ 12 (incorporating by reference "the certification previously filed in this action"); Dkt. No. 13 (Sworn Certification of Plaintiff).

### B. The Alleged Statements

#### i. SEC Filings

On September 14, 2014, Super Micro filed an annual Form 10-K report with the SEC announcing the company's financial and operating results for the fourth quarter and fiscal year ending June 30, 2014. Id. at ¶ 24. The 2014 10-K provided the following information about product warranties:

> We offer product warranties ranging from 15 to 39 months against any defective product. We accrue for estimated returns of defective products at the time revenue is recognized, based on historical warranty experience and recent trends. We monitor warranty obligations and may make revisions to our warranty reserve if actual costs of product repair and replacement are significantly higher or lower than estimated. Accruals for anticipated future warranty costs are charged to cost of sales and included in accrued liabilities.

Super Micro filed three quarterly Form 10-Q reports with the SEC for the 2015 fiscal year, each reiterating the financial and operating results for the preceding quarter: one on November 6, 2014 for Q1,[2] one on February 9, 2015, for Q2, and one on May 7, 2015, for Q3. Id. at ¶¶ 28, 30, 32. Super Micro also filed a Form 10-K on September 10, 2015, for the 2015 fiscal year. Id. at ¶ 39.

Each of these filings was accompanied by signed certifications from Liang and Hideshima according to the Sarbanes-Oxley Act of 2002 ("SOX"). Id. at ¶¶ 26, 29, 31, 33. Through the SOX Certifications, Liang and Hideshima represented, inter alia, that:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> Based on my knowledge, the financial statements, and other

---

[2] The court will reference the quarters of a fiscal year separately with the designation "Q" for quarter, a numeral to pertaining to the specific period, and a year pertaining to the fiscal year.

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

2

> financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> . . . .
>
> The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):
>
> a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and
>
> b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Id.

### ii. Other Statements

On August 4, 2015, Super Micro issued a press release announcing the company's financial results for Q4 2015 and for the fiscal year ending June 30, 2015. Id. at ¶ 34. The company also held a conference call that same day to discuss the 2015 financial results, and filed a Form 8-K on October 22, 2015, with revenue and expense projections. Id. at ¶ 36.

### C. The Instant Action

The original complaint drafted in the name of a different plaintiff was filed in this court on September 4, 2015. Plaintiff was appointed lead plaintiff on January 4, 2016, and he filed an amended complaint on April 1, 2016. Dkt. No. 23. The court granted Defendants' motion to dismiss that complaint, and Plaintiff filed the SAC on December 1, 2017. Dkt. Nos. 53, 54. This motion followed.

## II. LEGAL STANDARD

Three pleading standards govern actions for securities fraud: Federal Rule of Civil Procedure 8(a) and the plausibility requirement of Ashcroft v. Iqbal, 556 U.S. 662 (2009); the particularity requirement of Federal Rule of Civil Procedure 9(b); and the subject-matter specific

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
3

1  requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See Reese v.
2  BP Exploration (Alaska) Inc., 643 F.3d 681, 690-91 (9th Cir. 2011). "These requirements present
3  no small hurdle for the securities fraud plaintiff." In re VeriFone Holdings, Inc. Sec. Litig., 704
4  F.3d 694, 701 (9th Cir. 2012). A complaint that falls short of these standards must be dismissed.
5  See Gompper v. VISX, Inc., 298 F.3d 893, 897 (9th Cir. 2002) ("Congress made it crystal clear
6  that the PSLRA's pleading requirements were put in place so that only complaints with
7  particularized facts giving rise to a strong inference of wrongdoing survive a motion to
8  dismiss....").

### A. Federal Rule 8(a) and the Plausibility Requirement

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Iqbal, 556 U.S. at 664. The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
4

678.

**B. Federal Rule of Civil Procedure 9(b)**

Private securities actions sound in fraud because they resemble common-law tort actions for deceit and misrepresentation. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005). Claims that sound in fraud are subject to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-1104 (9th Cir. 2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule 9(b) pleading standard, even if fraud is not an element of the claim). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). This requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

**C. PSLRA**

The purpose of the PSLRA is "to eliminate abusive and opportunistic securities litigation and to put an end to the practice of pleading fraud by hindsight." Gompper, 298 F.3d at 897. It "requires that a complaint alleging misleading statements or omissions 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed.'" Reese, 643 F.3d at 690 (quoting 15 U.S.C. § 78u-4(b)(1)).

As to scienter, the PSLRA requires "that a complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" Webb v. Solarcity Corp., 884 F.3d 844, 850 (9th Cir. 2018) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). "[T]he court ultimately reviews the complaint in its entirety to determine whether the totality of facts and inferences demonstrate a strong inference of scienter." Gompper, 298 F.3d at 895. But when

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
5

doing so, "the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." Id. at 897 (9th Cir. 2002); accord Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007). It then compares "the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow[s] the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009); Tellabs, Inc., 551 U.S. at 324 ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.").

## III. DISCUSSION

### A. Requests for Judicial Notice

The parties each submitted requests for judicial notice. Dkt. Nos. 57, 60.

Under Federal Rule of Evidence 201(b), the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In addition, the court may consider for a motion to dismiss "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir.2011). However, the court cannot notice "facts that may be 'subject to reasonable dispute.'" Id. (quoting Lee, 250 F.3d at 689). "More specifically, [the court] may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." Id.

Defendants request the court take judicial notice of Super Micro's SEC filings from 2014 and 2015 as well as a chart exhibiting the historical prices of Super Micro's common stock. Plaintiff did not oppose this request, and the court finds the documents appropriately noticeable under Rule 201(b). The court will therefore grant Defendants' request and will notice the fact the

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

6

documents were filed with the SEC, and the fact the documents impart particular information. The truth of the information contained in the documents, however, cannot be judicially noticed because it may be the subject of reasonable dispute.

For his part, Plaintiff requests the court take judicial notice of Super Micro's Form 8-K dated January 30, 2018. Defendants oppose this request. According to Plaintiff, the significance of this document comes from the statement that Hideshima resigned as Super Micro's CFO on the same day the company released audit results. Plaintiff believes the simultaneous timing of these two events - the resignation and the audit release - is not coincidental and implies the plausibility of his allegations.

The court declines to judicially notice the 2018 8-K. Because the document merely notes Hideshima's retirement without revealing any details, it is not possible under the constraints of Rule 12(b)(6) review to infer the same wrongdoing that Plaintiff does from the document. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (explaining the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" when ruling on a Rule 12(b)(6) motion, even if it must construe the material allegations in the light most favorable to the non-moving party). And in the absence of such an inference, the 2018 8-K is not relevant to any issue raised by the SAC. Indeed, the SAC's allegations do not rely on the document, and the reporting date of the 2018 8-K falls well outside the class period. See Ruiz v. City of Santa Maria, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (denying request for judicial notice, in part because information to be noticed did not bear on the "relevant issue" before the court).

Accordingly, Plaintiff's request for judicial notice will be denied.

**B.  Plaintiff's Claims**

    **i.  Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5**

Section 10(b) of the Securities Exchange Act makes it:

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
7

employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j (footnote omitted).

Similarly, under SEC Rule 10b-5, it is unlawful for any person:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Thus, to state a claim under § 10(b) and Rule 10b-5, the plaintiff must show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011).

### ii. Application

#### a. The SOX Certifications

Plaintiff alleges the SOX Certifications submitted along with Super Micro's financial reports are false and misleading because "on November 16, 2015, the Company filed a Form 8-K/A admitting that a material weakness existed in the Company's internal controls over financial reporting related to the revenue recognition of contracts with extended product warranties." Defendants argue the SAC's allegations fail to sufficiently establish falsity or scienter under the PSLRA for claims based on the SOX Certifications. See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 613 (9th Cir. 2017) (observing the PSLRA requires "that the complaint plead both falsity and scienter with particularity"). Defendants are

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
8

correct.

As noted, the PSLRA requires Plaintiff to plead falsity by identifying the misleading statements and explaining why those statements are misleading. Zucco Partners, 552 F.3d at 990-91. In addition, Plaintiff must plead scienter with particular facts "giving rise to a strong inference" that Defendants made false or misleading statements with either the intent to deceive, manipulate or defraud, or with deliberate recklessness. Webb, 884 F.3d at 851. "Deliberate recklessness is an extreme departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." City of Dearborn Heights, 856 F.3d at 619.

Applying these standards to the SAC, Plaintiff has not plausibly alleged why the SOX Certifications were false at the time they were made. Plaintiff's theory is that Super Micro's subsequent disclosure of a weakness in internal controls demonstrates that the certifications contained misleading statements. But pointing out a later-discovered inaccuracy in certified reports is not enough under these circumstances. Importantly, each SOX Certification contains important qualifying language; that is, the declarants only certified the financial reporting to the extent of his or her knowledge on the date of execution. Thus, to successfully plead falsity, Plaintiff must also allege facts explaining why the declarants knew the financial reporting was false at the time it was made. The SAC contains no such allegations, despite statements from four confidential witnesses on other topics.

Moreover, the SAC does not raise a "strong inference" of scienter with regard to the SOX Certifications. Again, Plaintiff has not established with particular facts why he believes Defendants issued the SOX Certifications with actual knowledge of an inaccuracy, or even explained why Defendants would be at all motivated to "deceive, manipulate or defraud" by covering up improperly-recorded revenue for contracts with extended product warranties. See Webb, 884 F.3d at 856 (examining the plaintiff's motive allegations but finding them "unhelpful" in showing scienter). In any event, the fact that Plaintiff also alleges Defendants identified and disclosed the error, and does not allege any defendant made a stock sale before the public

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
9

disclosure, cuts against any inference of fraud based on the SOX Certifications.

Nor did Plaintiff state why the reporting error was so obvious that Defendants could be held deliberately reckless by not knowing about the weakness in internal controls. The absence of those allegations is fatal, since the SAC otherwise shows that revenue from extended product warranties had a minor impact on net sales and net income for fiscal year 2015; indeed, Plaintiff alleges the error resulted in an overstatement of only $9.5 million out of total net sales of $1,991.2 million, and an overstatement of only $5.9 million out of total net income of $1,467.2 million. Against this backdrop, the court cannot infer an obvious error in light of the magnitude of revenue and income. See id. at 857-58.

In sum, and in the absence of more specific allegations, the malicious inference that Plaintiff draws from the SOX Certifications is no more cogent and compelling than an unintended mistake. See Glazer Capital Mgmt., LP v. Magistri, 549 F.3d 736, 747 (9th Cir. 2008) (holding that SOX Certifications are only probative of scienter if the plaintiff alleges the person signing the certification was severely reckless in certifying the accuracy of the financial statements). The cases cited by Plaintiff in his opposition do not persuade the court to find otherwise. In each case, the court explicitly or implicitly recognized the same principle that ultimately governs the analysis here: that SOX Certifications were not intended to create a per se violation of securities laws. See In re Am. Serv. Grp., Inc., No. 3:06-0323, 2009 WL 1348163, at *41 (M.D. Tenn. Mar. 31, 2009) ("As to the Sarbanes-Oxley certifications, courts have declined to treat corporate officers' signature for such certifications, as a per se violation where accounting errors or mistakes are revealed by a subsequent audit."); see also Wieland v. Stone Energy Corp., No. 05-2088, 2007 WL 2903178, at *7 (W.D. La. Aug. 17, 2007) (finding the plaintiff sufficiently pled scienter in connection with SOX Certifications when a confidential witness suggested the directors knew of inaccuracies in financial reports); see also In re Proquest Sec. Litig., 527 F. Supp. 2d 728 (E.D. Mich. 2007) (finding that SOX certifications when coupled with a director's stock sales give rise to an inference of scienter); see also Middlesex Ret. Sys. v. Quest Software Inc., 527 F. Supp. 2d 1164, 1189-90 (C.D. Cal. 2007) (finding SOX Certifications in conjunction with other allegations

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
10

"further support" the defendant's knowledge of improper option reporting).

Accordingly, whether considered separately or in combination (Webb, 884 F.3d at 855), the court finds that Plaintiff has not adequately pled falsity or scienter with regard to the SOX Certifications. Claims under § 10(b) and Rule 10b-5 will be dismissed to the extent they are based on those statements.

### b. Other Statements

Defendants argue that Plaintiff lacks standing to challenge other statements alleged in the SAC. They are correct, though the issue is not one of constitutional standing. Rather, the other statements are non-actionable as to Plaintiff because he cannot support claims for securities fraud with false statements allegedly made after his stock purchase.

"A cause of action under section 10(b) applies only to misrepresentations or omissions made 'in connection with the purchase or sale of any security.'" Binder v. Gillespie, 184 F.3d 1059, 1066 (9th Cir. 1999) (quoting 15 U.S.C. § 78j(b)). It therefore follows that "[a]s a matter of law, 'conduct actionable under Rule 10b-5 must occur before investors purchase the securities.'" Id. (quoting Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1487 (9th Cir. 1991)); accord Kelly v. Elec. Arts, Inc., 71 F. Supp. 3d 1061, 1069 (N.D. Cal. 2014) ("Statements issued after a plaintiff's purchase of stock cannot form the basis of a Section 10(b) or Rule 10b-5 claim because the statements could not have affected the plaintiff's decision to purchase stock.").

Here, Plaintiff made one purchase of Super Micro stock on February 17, 2015. He nonetheless included a series of post-sale statements in the SAC unconnected to SOX Certifications: (1) a press release made on August 4, 2015, with financial results for Q4 2015; (2) a conference call that same day; and (3) a Form 8-K filed on October 22, 2015. Under Plaintiff's own allegations, however, none of these statements could have influenced his decision to purchase Super Micro stock, or in any way affected the price he paid in February, 2015. And it is not enough to allege these statements induced Plaintiff to retain the Super Micro stock he previously purchased to the extent the SAC implies such a theory. See Binder, 184 F.3d at 1066 (holding that plaintiff-investor's allegation he would have sold his stock earlier but for the company's

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
11

misrepresentations is irrelevant); see also Williams v. Sinclair, 529 F.2d 1383, 1389 (9th Cir. 1975) (holding that shareholders "who did no more than retain their shares" cannot maintain an action under Rule 10b-5). Thus, the court concludes based on the face of the SAC that these statements are non-actionable as a matter of law as to Plaintiff. See Binder, 184 F.3d at 1066; see also Kelly, 71 F. Supp. 3d at 1069; see also In re Solarcity Corp. Sec. Litig., 274 F. Supp. 3d 972, 1007-1008 (N.D. Cal. 2017).

Plaintiff's argument to the contrary is unpersuasive. He relies on two district court opinions - In re VeriSign, Inc., No. C 02-02270 JW(PVT), 2005 WL 88969 (N.D. Cal. Jan. 13, 2005), and Hoexter v. Simmons, 140 F.R.D. 416 (D. Ariz.) - which he believes establish his constitutional standing. But as noted, whether Plaintiff has standing to bring claims for securities fraud is not the issue, because Plaintiff does have standing under Article III to assert a claim as a shareholder who purchased stock. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731-33 (1975). What Plaintiff cannot do in light of the SAC's allegations, however, is pursue claims based on the statements allegedly made after his stock purchase. Where not inapposite, both VeriSign and Hoexter support this conclusion.

In Verisign, the defendants argued the lead plaintiffs could not represent a class including shareholders who purchased stock after the lead plaintiffs' last purchase. 2005 WL 88969, at *4. Though the district court acknowledged that "misrepresentations made after a person's purchase of stock could not possibly have induced that person to purchase that stock," it rejected the defendants' argument. Id. Citing Federal Rule of Civil Procedure 23, the court reasoned that "[s]imply because certain class members were injured by misrepresentations that came after the Lead Plaintiff had already acquired VeriSign stock does not mean that the Lead Plaintiff cannot represent the class." Id. The court also determined the lead plaintiffs had constitutional standing because the individual standing of a representative plaintiff "is sufficient to confer the right to assert issues that are *common* to the class, speaking from the perspective of any standing requirements." Id. (quoting ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 2:5 (4th ed. 2002)) (emphasis added).

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
12

In Hoexter, the lead plaintiffs alleged the defendants instituted a scheme to hide the company's true financial condition until the defendants were forced to disclose it. 140 F.R.D. at 422. The district court determined in connection with a motion for class certification that the lead plaintiffs were adequate representatives under Rule 23, even though the class included shareholders who purchased stock after the lead plaintiffs' last purchase. Id. at 421-22. The court observed that "purchasers injured by *similar* misrepresentations made over a period of time have a common interest in the action." Id. at 422 (citing Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975)) (emphasis added). Applying that rule, the court reasoned that the defendant's similar conduct over a period time rendered all class members' grounds for reliance similar, regardless of when a stock purchase was made. Id.

VeriSign and Hoexter do not assist Plaintiff in overcoming Binder. The central legal issues discussed in those cases were standing in its constitutional sense and the requirements for certification under Rule 23. Those are concepts distinct from the one implicated by this case, which is whether Plaintiff may pursue claims based on post-purchase statements as a matter of law. Neither VeriSign nor Hoexter provides guidance on that issue.

In any event, VeriSign and Hoexter actually weigh against Plaintiff when those decisions are closely examined. Both rely on the rule that lead plaintiffs may represent a class encompassing post-purchase statements if the allegations establish a fraud committed over a period of time by similar misrepresentations. Blackie, 524 F.2d at 902. For example, an early purchaser may represent a class when "a series of financial reports uniformly misrepresent a particular item in the financial statement," because in that situation, the misrepresentations are "interrelated, interdependent, and cumulative." Id. at 903-904.

That scenario is not presented by the other statements alleged in the SAC. As Defendants point out, those statements are markedly *dissimilar* from the SOX Certifications. Whereas the claims based on the SOX Certifications allege false representations about Super Micro's internal controls, claims based on the other statements encompass false financial results and forecasts. Indeed, Plaintiff recognizes the different categories of statements in the SAC (¶ 2), and does not

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
13

argue otherwise in opposition to this motion. The court therefore finds the SOX Certifications and other statements are not "interrelated, interdependent, and cumulative," and cannot be combined to form a common scheme. Plaintiff cannot pursue claims based on the other statements as a matter of law.

Accordingly, the § 10b and Rule 10b-5 claims based on the other statements will be dismissed as non-actionable.

### iii. Section 20(a) of the Securities Exchange Act

Section 20(a) "makes certain 'controlling' individuals also liable for violations of section 10(b) and its underlying regulations." Zucco Partners, 552 F.3d at 990. The statute provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Thus, a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates (1) "a primary violation of federal securities law" and (2) that "the defendant exercised actual power or control over the primary violator." Zucco Partners, 552 F.3d at 990. The § 20(a) inquiry is usually "intensely factual." Id.

"Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b)." Id. Such is the case here. Thus, Plaintiff's § 20(a) claim will be dismissed along with the § 10b and Rule 10b-5 claims.

### iv. Leave to Amend

The court must now decide whether Plaintiff should be permitted leave to amend, which is generally granted with liberality. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave need not be granted, however, where the amendment of the complaint would

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
14

cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962); Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994). Leave to amend may also be denied for "failure to cure deficiencies by amendments previously allowed." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

The prior version of the complaint was dismissed for failure to adequately plead falsity. Since the claims based on the SOX Certifications will again be dismissed on that and another ground, the court finds that permitting further leave to amend would be futile at this point. The claims based on the SOX Certifications will be dismissed without leave to amend for that reason.

The court also finds that permitting amendment to claims based on statements other than the SOX Certifications would be futile, since those statements are non-actionable as a matter of law. On that basis, those claims will also be dismissed without leave to amend.

### IV. ORDER

Based on the foregoing, Defendants' request for judicial notice is GRANTED. Plaintiff's request for judicial notice is DENIED.

Defendants' Motion to Dismiss (Dkt. No. 57) is GRANTED. All claims in the SAC are DISMISSED WITHOUT LEAVE TO AMEND.

Judgment will be entered in favor of Defendants and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: June 27, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-04049-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS